May it please the Court, Davina Chan on behalf of Malik Smith. Mr. Smith was convicted of the crime of assault with a dangerous weapon. There is no dispute that the use of a dangerous weapon is an element of this crime, and there is no dispute that the question whether an object is a dangerous weapon is a jury question. But the jury at Mr. Smith's trial was not instructed that for Mr. Smith to be found guilty of this crime, the government must prove beyond a reasonable doubt that he used a dangerous weapon. At the trial, I didn't see the defense counsel raising the argument of the dangerous nature of the knife at trial. All of her arguments related to intent and then later to justification. Did she raise that issue at trial? Was that something that she contested? Yes, Your Honor. She objected to the expert testifying that the use of this dangerous weapon could cause serious bodily injury or fatality. That objection was overruled. And in closing, to do it outside of the context of intent, because whenever I saw her raising that issue, she was saying because it wasn't dangerous, he couldn't have really intended to hurt the individual. I agree that her primary defense at trial was intent. But the question is whether the error was harmless. I think that we're asking the wrong question because the question of whether the error is harmless is what the evidence shows. Counsel, I don't think it's about harmlessness exactly, though it also affects harmlessness. It looks as though it may be even as far as intentional waiver. The lawyer said for Smith, the judge asked, will it be an issue whether the shank was capable of inflicting serious bodily injury? And the lawyer for Smith said, no, I believe the issue would be, well, whether. I don't want to say absolutely not because there's an issue about whether the intent. And then the judge says intent is a different issue. Is the shank capable of inflicting serious injuries? Will that be an issue? And she says, no, Your Honor, I don't believe that will be an argument I'd make. No, that's not the argument I'm going to make. And then she didn't. Your Honor, she does say that pre-trial. She says a lot of different things pre-trial. She takes a number of different positions pre-trial. But in that hearing, the judge says, well, why don't we defer resolving this issue? The government can make its proffer, and you can object when the time is appropriate. And she hadn't heard the evidence in the case yet. When the evidence actually came in, she objected. Before the government called Mr. Nisperos, she specifically objected to him testifying. I know she objected to him, but it's a different issue. As I understood it, she told the judge that she wasn't going to make an issue of whether it was a dangerous weapon. She did not ask for an instruction that was any different from what he gave on that particular point, if I recall right. And she didn't argue that it was not a dangerous weapon. Actually, she did. Back at the excerpts of record. She did what? Did what? She did ask for an instruction different than what the judge gave. With regard to this dangerous weapon clause? Yes. Could you read the words and tell us the page number again? It's at ER 57 and 59. At ER 57, she objects. If I can get my excerpts out, Your Honor. She says that the language proposed, namely prison-made knife, usurps the jury's role as the finder of fact. And at 59, she proposes an instruction which would have cured the error. And the instruction she proposed is that the third element that the government must prove beyond a reasonable doubt is that Malik Smith used a dangerous weapon. And then she proposed the next line to find dangerous weapons. So she absolutely objected to this instruction. Did she introduce any evidence, though? She didn't introduce any evidence, but the question is whether a rational jury could have found otherwise. The question is not what was the defense at trial. She clearly argued in closing argument that Malik Smith did not use this weapon in such a way that it could cause fatality. She says there's all this evidence about jugular veins, but there's no evidence that he used it to stab the jugular veins. So first she did argue. It doesn't have to be death, does it? Serious bodily injury counts. Yes. A serious bodily injury is quite serious. The definition of serious bodily injury is bodily injury that involves the substantial risk of death, extreme physical pain, protracted and obvious disfigurement, or protracted loss or impairment of the function of a bodily member, organ, or mental faculty. I'm sorry. Go ahead. If this object had been more precisely targeted at the victim's eye, was it not capable of putting out his eye and wouldn't that count as serious bodily injury? I think it would. And so I did not raise in my petition for a hearing the sufficiency question. If we're asking could a rational jury have concluded that this happens, although I think it's a close question, I have not raised that in the petition for a hearing. But the question isn't could a rational jury have concluded that it could cause a serious bodily injury. The question is could a rational jury have concluded otherwise. Could a rational jury have found that the government had not proved beyond a reasonable doubt. What we have here is a weapon that broke. It caused injury that required only minor first aid and then it broke. What do you make of that? I'm sorry. Go ahead. Was the jury instructed as to the death or serious bodily injury what serious bodily injury was? It was not. Okay. I didn't raise this as a separate issue because that issue was not raised at trial. But the jury was not instructed as to what a serious bodily injury is. And I think that when we hear serious bodily injury, it doesn't sound that serious. But when you look at the statutory definition, it is quite serious. But that's not an issue. That's not the issue here. Okay. Just for those of us who haven't done that much trial work in the district courts, walk me through a little bit. What happens if a defense lawyer wants to remove an issue from the jury's consideration, maybe because the evidence is so bad? They stipulate. They can offer to stipulate, right? Offer to stipulate. And does the government have to accept the stipulation? Absolutely not. So if the government chooses not to accept the stipulation, it can insist on presenting the evidence supporting the charge, right? The defendant can't unilaterally exclude the evidence, right? As a general matter, no. Obviously, there are exceptions. And how are stipulations done in district court? Are they in open court? Are they done in writing? I'm just wondering how that works. Evidence before the jury. So they enter a written stipulation, which is read to the jury. It has to be signed by both the defendant, his attorney, and the government. And it's read to the jury, and the jury is told either this issue has been stipulated to and it's not before you, or they're told the parties have stipulated that this testimony would have come in and it's up for you to decide. But it's never sort of done in trial. So you don't think that the defense counsel's statement here, when she says I don't plan to contest this, is in effect a stipulation? Absolutely not. It was not? The jury wasn't told that this was a stipulation? Absolutely not. And the government didn't accept it? She did contest it. In fact, she did contest it trial. Not only was it not a stipulation, the court said let's not resolve this now. Let's resolve this later. You bring it up when it comes up. And when it comes up, she brought it up. She absolutely contested the issue. And frankly, absent a stipulation, even if she had not contested the issue, the question is not what was her defense at trial. The question is what did the evidence show? And in this court's decision, Medley v. Runnels, which this court decided en banc last year, that was a case where the instruction in question was that a flare gun was a firearm. And this court sitting en banc on habeas found that it was not only error, but it was not harmless error under habeas for the state court to instruct that a flare gun was a firearm. The defense at that trial was I didn't do it. It wasn't whether or not the flare gun was a firearm. It was I didn't do it. There was no evidence for that. Counsel, the instruction there was different. Firearm was a term of art, and the judge did not let the jury decide whether a flare gun was a firearm. He said it was. It was one of the elements. Here, what the judge said was that to prove assault with a dangerous weapon, the government had to prove three elements. The third, that the defendant used a prison-made knife. A prison-made knife is a dangerous weapon if it is used in a way that is capable of causing death or serious bodily injury. So he has that if in there, which seems to leave defense counsel free to argue this was not used in a way capable of causing death or serious bodily injury. But the jury was never instructed that it needed to make that finding at all. I agree with you that that definition is a definition of dangerous weapon. There was no if like that in the Medley instruction. Right. And I'm not saying that the Medley instruction was like this instruction. What I'm saying is if the question is a lot of the questions seem to be directed at harmlessness. In Medley, the error was found to be not harmless, even though the defense at trial was not this flare gun is not a firearm. The defense at trial was I didn't do it, I wasn't there. So I agree with you that the instructional error is not the same error. This is Judge Hawkins. Excuse me. I'm sorry. I have a question. Did the defense argue in final argument that the shank was not a dangerous weapon? The defense argued that I think it's ER 320. Could you start with a yes or no? Yes. Yes. They did argue that. Yes. She did not use those words. But what she argued was I think it's at ER 320. She talked about the minor first aid issue, how this weapon only caused injuries that required only minor first aid. And then she says even though there's a suggestion about the jugular vein, there was absolutely no. This is page 320 of the ER. You're reading now from line five, starting line five. Yes. Even though there's a suggestion about the jugular vein, there was absolutely no testimony about anyone stabbing Mr. Jeffries or injuring Mr. Jeffries in the neck. Nothing. Now, the definition of dangerous weapon is an object that is used in a way that is capable of causing serious bodily injury. Wait a minute. Didn't this thing cut the eyelid clear through? It did. It did. And I'm not saying that a rational jury could not have concluded. If it's closed, the eyelids cut clear through. If it's open, I guess the cornea? Yes. I am not arguing that a rational jury could not have concluded that this weapon was capable of causing serious bodily injury. What I'm saying is that a rational jury could have concluded otherwise. And under Neeter, that's the standard. Not could it have concluded that the element was proved, but could it have concluded Answering Judge Hawkins' question as to whether or not a defense raised this as an issue in closing argument, and you read this language that he just – you interpret the language just read to us as an argument. This is not case-by-case. Not capable as is. So the definition is not is this weapon capable of causing serious bodily injury. Why isn't this just an argument that he didn't in fact cause much harm? I think it's actually because the definition of dangerous weapon is capable as used. Was it used in a way that is capable? What she's saying is it was not used in a way that was capable. If the definition was is this object capable of causing death or serious bodily injury, that would be different. Anything is capable. If I use this pencil to stab somebody in the eye, it is capable. But if I use it to hit them on the back, it is not capable anymore. And this – I have another question if you don't mind. I don't. Defense counsel at trial made a Rule 29 motion at the close of evidence. Yes, she did. Was any part of that directed toward the contention that the shank was not a dangerous weapon? No, it wasn't. And that's why I lose on Rule 29. And that's why I lose if the issue is whether the evidence was sufficient. Also, by that point, had the jury instructions been settled upon? It really depends on what you mean by settled. When did the district court judge reject defense counsel's instruction, proposed instruction? When he read the wrong instruction. Because she proposed one and he read a different one, and she preserved her. Well, at some point, the judge must have rejected the proposed instruction. It's not really – I think it would be when she – at a certain point, she brings up her defense instructions, and there's a discussion of that. And during that discussion, he says, well, by the way, have you looked at my instructions? And she says, yes, and there's a discussion of those instructions, and then he says, okay. So that would have been probably the moment. The reason this matters, obviously, is because if either at the point of the closing argument or at the point of the Rule 29 motion she knew that the instruction was going to be what it was, then there wasn't a whole lot of point in raising a lot of argument about whether it was a dangerous weapon because the instruction was essentially going to decide that question. So the time sequence may, in fact, matter. I agree with you. I agree with you. But I think that probably – it's really hard to tell from the record when it was actually settled. I don't think that it's clear that it was settled at the time she knew who it was. Did the judge say something like, I don't want to hear about it? Or did the judge say, this is tentative and you can address it again? Or neither. Right, at which point? I don't think he said anything. I think he settled on what the instruction would likely be pre-trial, didn't he? To be perfectly honest, I'm not sure that he did. Maybe in Alaska. But I'm perfectly honest, I don't recall that from the record. But there was a submission by the government about pre-trial instructions. Yes. Which were not exactly this and not exactly what we're asked for. Something else. I think they were actually exactly this. I think that what he read at trial was exactly what the government asked for. But under local rules, each side has to submit proposed jury instructions before trial begins, correct? Yes. And she proposed instructions. That's standard practice. It's standard practice. And different judges do it differently. And Judge Anderson wanted it done jointly, which they did. And that's not in the excerpts of record. There's joint instructions, which are – they joined. And then there are the ones that she objected to. And this is one of the ones that she objected to. And I don't believe there was a ruling before the time that he actually read it. And he said, are there any objections? And she says, those I've previously stated. Even though the instruction in Medley was a little bit different, or was different. It was different. Do you contend that Medley sort of controls the outcome of the case here? I don't contend that it controls the outcome. But I think that it strongly counsels the outcome. How does it help you? It helps me, I think, mostly in harmlessness, to tell you the truth. Because the instruction in that case was different. Medley helps me because it makes perfectly clear – what has always been perfectly clear, that the jury has to decide all the essential elements of the offense. In that case, one of the essential elements of the offense was the use of a firearm. In this case, it's a dangerous weapon. So it helps me in the sense that it's clear that this court follows what is well-established law, which is that the jury must decide even when it's a term of art. And in this case, dangerous weapon is a term of art, just like firearm was. So do you read this instruction that was given here in such a way that it took away from the jury the dangerous weapon issue? Yes. It did. This was our form book instruction at the time, right? The judge copied it out of the old form book, 8.5? Yes. And it has since been amended.  Thank you. Thank you for the government. May it please the court. Eric Silber on behalf of the United States. I'd like to start actually where defense counsel left off, which was in the instruction itself. The government believes, as the panel originally found or held, that this instruction was more likely to be interpreted by the jury in context to instruct on the element of the offense. The instruction, this was a unified instruction on the elements of the offense. It started with the charge was assault with a dangerous weapon. It then noted the type of weapon, prison-made knife, and it gave a definition for when a prison-made knife is a dangerous weapon. This is not like medley. But that's not what it said. It didn't say that at all. It said a prison-made knife is that they had to find whether it's a prison-made knife, and then you have the sentence floating out there that doesn't seem to connect to anything. Well, I would respectfully disagree because it said not all prison-made knives are dangerous weapons. It said a prison-made knife is a dangerous weapon. It doesn't say what relevance having it be a dangerous weapon is, whether they have to find anything about dangerousness. Where in this instruction is the jury told you have to find dangerousness? Well, I think there are two parts to that. It's always better to have one part. First of all, they were told the government has to prove these things, and one of the things that was provided there was the definition. It was not just prison-made knife. It was the things that followed what the government had to prove was the definition that followed. Also, they were told – I had no idea what he just said. If I could direct the Court – Yeah, I'm looking at this. Two extra to record, page 303, which is where the Court instructed about this. I think that's what we're all looking at. Yep. At page 303, what the Court said, and I'll – It started at line 11, right? Well, I would actually say it was an integrated instruction that started at line 8, but for this purpose, I'll – Sure, sure. No, no. I'm sorry. I didn't want you to start lower than 11. You can go back as far as you think necessary. For this point, I think the line 11 is what's important. So what it said is, starting at line 11, in order for the defendant to be found guilty of the charge, the government must prove each of the following elements beyond a reasonable doubt. Then it listed the three things and the definition. This was all one instruction that was read. The definition was not on a separate page. I'm sorry. Where's the definition? I'm sorry. It said line 18 to 20. So this was part of this, what the government has to prove in this case. Yeah, but what they said they had to prove was that he used a prison-made knife. And then they defined when a prison-made knife is a dangerous weapon. But where did they say you have to find it's a dangerous weapon? Well, the way it was read was he had to prove all of this, which included the definition. Now, I understand as lawyers or as judges, we look at that and we say that's a little problematic. No, I didn't say it's a little problematic. We'd say they told him they had to find that it's a prison-made knife. And then they said a prison-made knife is a dangerous weapon under these circumstances. But where did they say you have to find it's a dangerous weapon? Well, I think the definition was listed as one of the things the government had to prove. I mean, it was – Do you know where this came from, this language came from? Was this something that the government proffered? This language was from the model of jury instruction 8.5. So this is an example – But it was also the same as the prosecutor's requested instruction. That's true. The prosecutor took it from the model instruction. I mean, this is a long – The prosecutor inserted – the model instruction has blanks. And it was ambiguous, really, before it was amended. It has blanks. So the prosecution inserted the words in and gave that instruction to the judge. And that's what the judge read. Can I ask you one other question, though? You say it's all – you were saying instructions all on one page and it was all – did the jury actually get these instructions and take them into the deliberation room? They did. The court noted – this is an excerpt of record page 297. The court noted it would provide the instructions to the jury. They would be in the room with them. And the actual instructions were filed there at clerk's record 77. Did they get them in the form that they are repeated – set forth in the – at page 303 of the excerpt? Well, I think at 303, the way they're different is I believe on the way they were provided to the jury was that line 8 and – line 8 through line 10 and line 11 through line 13 before the numbers were part of one paragraph. Then you have first, second, third, and the definition that followed that. And that's how it was on the page that was given to the jury. And that's also how it was stylistically when read to the jury because – So you're saying that what we have is not an accurate representation of what was handed to the jury? I respectfully disagree. It's not – what – No, I asked you whether the way – what we have is what was handed to the jury. And I thought you said no. If the answer is yes, they got it in this form, then say yes. If they – if what we have is not in the same form it was given to the jury, tell us that. Yes, it's the same words. It's not in the same – No, I didn't ask you whether it was the same words. So you're saying the way it is represented in the excerpt of record is not the way it was given to the jury? That's correct. The paragraph structure was different. Okay. Well, that's what I asked you. Excerpt 56 is the government's proposed instruction that is in terms of the wording, if not the paragraphing, appears to be identical with what was given to the jury. Is page 56, except for saying that it's the government's proposed instruction, is that the way the page looked? Yes, that's my understanding is that that's exactly the way the page looked, which is also – I'm sorry. Page 56? 56 of the – volume one of the appellant's excerpt. Now, Judge Wardlaw referred to blanks being filled in for the model instruction. Where were the blanks? The model instruction, if you look actually at – I'll use page 56 as an example. On line 12 of page 56, what the model has is third, the defendant used A, and it has weapon in brackets. And then under line 13, it has A and then weapon in brackets is a dangerous weapon. The model instruction is designed to insert the type of weapon into the brackets, which is what the court did here and what the government asked. I mean, this was how the model instruction was designed. It was designed in the third part to put what the weapon is and the fourth part to give the definition. I recall it tells the judge to insert the weapon. That's correct. And, in fact, it used to say – because this instruction originated in 1989. It's not a new instruction. So you're – the form of the instruction that was given to the jury is similar to the form that you gave the judge. That's correct, Your Honor. So you have, first, that he intentionally struck her wounded. Second, that he acted with specific intent. Third, that he used a prison-made knife. Those are the three elements. Then you have a floating sentence, which is not numbered anything. It tells you when a prison-made knife is a dangerous weapon. But all the jury was told the element was was a prison-made knife. They were never told that an element was that it be a dangerous weapon. Is that right? Well, I would respectfully – no, I would respectfully disagree because I don't know the jury knows inherently what an element is versus a non-element. They're not – they apply their common sense to this. I don't think they understand when it says prove this that the numbered parts are only the elements. They're given a definition. It says here are the elements, one, two, three. Well, it didn't say there's only three elements. It said here are the elements the government has to prove. And one of the things that follows that is the definition. And I also know the definition weights back to – Linguistically, it's a little bit difficult. You can say the government must prove each of the following elements beyond a reasonable doubt. It must prove first, second, and third. That follows. But how does it go must prove each of the following elements beyond a reasonable doubt? A prison-made knife is a dangerous weapon if it is used – I mean, linguistically, it doesn't work. It's not something that the government must prove. I agree with you that linguistically it's awkward because you don't prove a definition. You apply a definition. But I think it was listed as what had to be proved here, linguistically awkward or not. And if you refer back to the initial kind of – the initial paragraph which said the charge here is assault with a dangerous weapon, they were given a definition of what a dangerous weapon is. It seems to me the jury could draw two conclusions from this. One is that a prison-made knife is per se a dangerous weapon. But, in fact, the instruction tells them the opposite. It tells them only some prison-made knives are dangerous weapons. It says if it's capable of using a way of causing death or serious spinal injury. The other interpretation, which is what the panel noted, was that they had to apply the definition. I think it's important to look at it in context, as the panel did, which is look at it in light of the lesser-included offense instruction which followed, in which it was twice repeated it was assault with a dangerous weapon, not assault with a knife. In light of the closing of the government, and this is at Excerpt of Record, page 311, this is what the government said. The defendant is charged with two crimes. Assault with intent to commit murder and assault with a dangerous weapon. You've seen the weapons. If you want to look at them again, you can do that. These are as dangerous a weapons as you're going to find in prison. These are weapons that are capable, as the doctor said, of killing somebody. That is a dangerous weapon. That had mentioned knife, but not at all. It emphasizes dangerous weapon, dangerous weapon, and applies – Essentially, you're arguing that these instructions were ambiguous. Is that what you're arguing? I would say that most of them are ambiguous, and in context, it's not reasonably likely that the jury would have applied them at any point. But if they're ambiguous, and if I thought they were more ambiguous than you do, where does the burden – who wins at that point? Doesn't the defendant win if there was an unconstitutional interpretation, which was at least a good possibility? I would respectfully disagree because I think that's what the Supreme Court has gotten with a line of cases, for example, in Middleton, which is if it's ambiguous, then the question is, is there a reasonable likelihood that the jury applied it in an incorrect way? And if you look at the context here, there is no reasonably likely – So that's your – your ultimate submission is that there's no reasonable likelihood that the jury read it this way? That's correct. And, again, it's context. It's – they were told over and over again – Not that they could have read it your way, but that there's no reasonable likelihood they would have read it the other way. That's right. I mean, the Supreme Court has made clear in Victor, for example, that could is not the standard, that it's – reasonable likelihood is the standard. And when you judge this in context of the assault with a dangerous weapon in this element, the repetition of assault with a dangerous weapon through the lesson included, the prosecutor's closing, which in part the Supreme Court relied on to judge in context, in Middleton, the Supreme Court noted it was remissible with an ambiguous instruction. Now, that was a state interpretation to have the prosecutor clarify it, particularly when it's a pro-defense clarification, which is what this is. This was – defendant's reading of the instruction is we had to prove less, but here what the prosecutor said is we had to prove more, which is the correct – the correct definition. I would also note I don't think the pre-instructions here are particularly significant because the Court said the later instructions will control. But I will note that the pre-instructions repeated dangerousness. They used this definition, much like this did, and they did not have the knife even in the pre-instruction definition. It had, for the third element, defendant used a weapon, and then a weapon is a dangerous weapon if used in a way capable of causing death or serious vital injury. Just so I'm clear on this point, I don't want to start you from the main point. Are you taking the position that defendant didn't properly object to the instruction, and this is before us on normal harmlessness review, or are you taking the position that this was not properly objective to win this case? You know, we indicated in our brief to Novo that in looking at this as a pre-trial argument, I actually think, and I know the issues change slightly between the opening brief and the fly brief, I think this is actually not the same objection that was raised in the district court. What was said to the district court, and this is at ER 57, is in addition the language proposed, namely prison made knife, usurps the jury's role of a finder of fact, the proposed language is more accurate. I don't believe the claim now is that this usurped, that it told them as a matter of law it's a dangerous weapon. What it is is it omitted an element because it never included dangerous weapon in the charge. None of the lengthy briefing that we've had on this was submitted to the district court. That's it. That's the entirety of the objection there. Now, it is true. There's also the proffering of a different instruction. Does that count for anything in your book? No, because this court in Elias and Klingler said merely proposing an alternative instruction that would have corrected the problem isn't itself specifically and distinctly raising a claim. What you need to do is raise a claim. But here you have an objection to the government's instruction, perhaps not phrased as articulately as a counselor has done so today, but there was an objection there. I'm not happy with the government's proposed instruction. There was that objection, yes? Yes. And there was a proffering of an alternative instruction which, if given, would have cured the problem we're talking about today. Yes. In the government's view, that is not enough to preserve the objection. That would actually be correct because I think you have to give the district court a chance to correct it. Here this is an easy correctable problem that's pointed out to the district court. Look, this is the problem. What's more correctable than saying, here's my instruction, which solves the problem, or more accurately, affects the statute? Well, I think you do have to explain to the district court what it is that's the problem with the model, particularly a 20-year-old model instruction like this, because the defendant's instruction did other things that were impermissible. It wasn't just this wasn't the only thing that was part of the defendant's instruction. Well, you say it's not the only part of his instruction. You mean all the entire instructions or this particular instruction? I apologize, Your Honor, I did not. Well, when you say it's not all of the defendant's instruction, you mean all of the total package of instructions or all of the instruction applicable to this issue? This instruction, the defendant wanted to put in the heading of this instruction that the defense was without just cause or excuse, even though there had been no self-defense issue presented. And the court did not give that part of the instruction. So the defendant's instruction as a whole had other things to it apart from this. But I don't think really proposing the instruction. Weren't there numbered instructions? There weren't numbered instructions? Instruction 10, 12, 15? I do think that they were numbered. I think if you look at page 59, which is where the defendant's proposed instruction is, all I'm trying to point out is that there were other parts of that that were problematic. Other parts of that particular instruction? That particular instruction. You're talking about line 4? That's correct. It says without just cause or excuse, which the defendant wanted to argue, even though there was no evidence on that. And I would actually note one thing that's relevant to this, which is the defendant wanted to rely on the without just cause or excuse in the heading only, without it being a listed element below. They thought it would be appropriate to have it in the heading. So, I mean, I think it was reasonable to think that the jury would make that interpretation here. I'd like, if the Court would, if it's okay with the Court, to return to harmlessness on the time that I have remaining. I actually think here that the concession the defendant has made, that if you stabbed someone in the eye with this knife, it would have had potential for serious injury, would have caused serious injury, is decisive of the issue here. Because for this provision, we're just talking about the capability of an item, not what actually happens. You don't have to inflict serious bodily harm. This is assault with a dangerous weapon. It's an assault statute. You don't even have to strike them with a knife, ultimately. And that itself resolves it. Has that been argued in this case by the government up until today or in response to the questions that were given by the Court? We did. We argued in our brief at page 29 of our answering brief, which is this Court has indicated in Summerlin, in Kiyosera, in Fernandez-Rios. When this Court takes the case, Hambaca takes the entire case. We argued harmlessness. Now, it was brief, but it was brief because we'd gone through the sufficiency of the evidence challenge. So the evidence would have already been fully discussed up until that point. So we said the error in the event was harmless, and we cited Vesivius Ulibarri, which is a case of this Court on harmlessness. So I do think the harmlessness is properly before this Court. I would note, simply as a side matter, Rule 28 U.S.C. 2111 and 52A both speak in mandatory defense of not reversing unless it affects substantial lives. In this Court, in Gonzales Flores, it said it has authority to sua sponte considered harmlessness in any event. But I would note we properly raised it, and it's properly before this Court. I would just note as a side note, that is the type of issue that can sua sponte be raised. But the undisputed evidence that you're referring to in your little paragraph in the brief was included the testimony of the physician's assistant, right? I mean, that's what the undisputed evidence is. That's true, although it was also the knives. It was the injuries resulting from the knives and the photographs of those. It was the knives themselves, how they hold up through the attack. I mean, after full force blows to this, to some of the hardest parts of the face, the eye and the head, you have the tip of this knife, this is a government section of record six, being as sharp as it ever was. I mean, if this was a styrofoam type instrument, it would be. The knife broke. It snapped in two, but it didn't shatter. It didn't crumple. After full force wounds, leaving the tip as sharp as it was, it snapped in two. But this is not a flimsy type of knife. And, in fact, I would note that the defendant argued the contrary. It wasn't just, as Judge Kleinfeld, you noted, in ER 50 and 51 pretrial. I think also at trial, the defendant, to make an argument they had, argued to the contrary, that this was, in fact, a strong object. This is the same point that the defense counsel made. The extra record 320 to 321. This is where the defendant described the injuries and the knife broke. What the defendant said is this isn't a type of psycho stabbing. This isn't. It's been described and said you couldn't believe this. What they said is it doesn't make sense because for it to break, it would require so much force that you'd see a lot more than what you see. And then they said, they suggested Jeffries had broken a knife on the concrete and then what, and it was stabbed. What the defendant was doing was just hitting him with the bottom of the object. They said at 321, we are not saying that he did not injure him with the bottom half of that object. What they were saying there is this is a strong knife. This is, it requires so much force that you'd see a lot more than you see here to do this, but that the story, what was being told about what happened, wasn't true. They were not attacking these. Did the jury see the knife? They did see the knife. In fact, again, as I mentioned previously, that was the government's closing essentially on this issue. It was you've seen the weapons. If you want to look at them again, you can do that. These are as dangerous as the weapons as you're going to find in prison. That's the record, page 311. It's important to note what this Court has done in cases like Wiggins, where it cited the Eleventh Circuit case in Gilbert, to say that there are certain things that are intrinsically weapons, like knives and guns. I mean, that was exactly what it was quoting. There are other things that depend on their use more often, and that's like the shoes and belts in Wiggins. Knives are intrinsically considered dangerous weapons because of their ability to cut. We don't have to ask whether this knife could cut, whether this was so flimsy they couldn't do it, because we know it could cut. You have before you the pictures of that, that you have a government's Excerpt of Record 8 through 11, the pictures of the injuries, most notably the pictures around the eye at government's Excerpt of Record 8, which were described as three full-skin lacerations, two of which were 8 centimeters, one of which was 10 centimeters. You also have at government's Excerpt of Record 9, another 8-centimeter full-skin thickness laceration on top of the head. Full-skin thickness, what does that mean? Nisperos didn't specifically say, but I think the reasonable interpretation was through all layers of skin. I would also note he described three types of injuries, and that was the most severe. He said superficial abrasions, lacerations, and then full-skin thickness lacerations. And these injuries around the eye and the top of the head were the full-skin thickness lacerations, which, pursuant to his own testimony, would be the most serious of them. I would also say, aside from the injuries, you have images of the blood before you, at government's Excerpt of Record page 3 and 5. These are not paper-cut-type injuries, which just bleeds a little bit. There's blood everywhere on the floor from this assault. The question is, was this a knife-knife or a flimsy knife such that a jury could have acquitted? And it was not a flimsy knife. It did what knives do. It cut the skin. Yes, the victim was lucky that the knife was right above the eye, struck above the eye rather than in the eye, but there's no question that, in fact, it would have inflicted serious bodily injury if it had been struck in the eye. And I think the defendant's taking too high of a standard here on what you have to prove for this, because it's the capability of the knife. Once you start making stabbing wounds, stabbing, trying to stab someone with a sharp object, you've satisfied the statute here. For example, if I take a pencil, for example, which is an innocuous object, but it's sharp and it can cut, if I start trying to stab someone with that, that's going to be a dangerous weapon. It can, if you hit someone in the eye with it, pierce the eye and cause serious injury. And that's irrespective of the fact that a tip of a pencil is particularly flimsy. I could get rid of the tip of a lead pencil just pushing against the wood here. Despite the fact that I can break a pencil with two hands, I mean, it's easy to break a pencil. It's not the sturdiest of objects. What it can do, though, is cut through the skin and cause serious injury. So, too, these knives here. And I would – But in this instance, again, the definition of serious injury wasn't given. What is the definition again? Use it – well, there's two – actually, there's two different ways it could – it could be inherently dangerous or used in a way capable of causing death or serious bodily injury. Here they were given the capable of – used in a way capable of causing death and serious bodily injury. Either one. I mean, inherent – the objects are inherently dangerous. The question was what is the definition of serious bodily injury. It's used in a way capable of causing death and serious bodily injury. No, but what is serious bodily injury in that definition? What's the sub-definition that goes with that? Well, it's not defined. Actually, the parties in the panel applied the definition from 1365. I'm not actually sure that's correct because Congress didn't choose to define dangerous weapon that way. That's a different statutory provision. That's assault resulting in serious bodily injury, and that's the definition provided for that. It can see why when you actually had injuries observed, you would apply the definition to see if they meet it. But here Congress chose not to. Assault with a dangerous weapon has been in the statute since, I believe, 1948. This definition was added in 1994, not – Even if you applied that statutory definition, I suppose that poking someone's eye out would count. I agree. So if it's capable of doing that, then it would satisfy under the definition from the other statute. But it has to be a use that's capable of doing that, right? And I assume that – so then there are two possibilities. One is that if you use the knife to stab somebody that that's – it doesn't matter where you stab them, or it does matter where you stab them? Well, I would say it doesn't matter where you stab them. Once you use it as a stabbing instrument, it's capable of. But there's no reason to decide that here because here we have stab wounds around the eye. So given that it would meet – it would meet the definition, Judge Graber. It would cause – stabbing someone in the eye would cause extreme pain, would likely disfigure them, and would potentially blind them. It's the type of – it has the potential to do all the things that are mentioned there. So once you start using a sharp instrument as a stabbing tool, you've met the definition. And that's what was done here. But, again, this is – I think it does say if it is used in a way that is capable of causing serious – of causing death or serious bodily injury. So if the testimony had shown that he only stabbed the victim in the back with the thing or in the shoulder, then there would be a serious issue on that. But you've got the use in the instruction. You didn't rely on intrinsic nature of the device. Well, that's true. It was the use instruction. I agree that it would – we still think it would satisfy the statute if you were just using it as a stabbing instrument. But there's no reason to decide that here, as Your Honor indicated. I mean, the stab wounds were around the eye. I mean, it was a fortuity that it didn't – Was the testimony – I wasn't sure I understood it. Was it that one person held the victim while the defendant stabbed him in the eye with the prison-made shiv? The testimony was that one person held the victim while the other person stabbed him. Now, the correctional officers missed the first 10 to 20 seconds of the fight, which is indicated in the record, page 364 to 365. So when they arrive, what they see is stabbing in the back. I will say no one saw the stab wounds in the eye. But the stab wounds in the eye – Well, someone saw it, the perpetrator, the victim, until the blood was in his eye and the guy holding the victim. That's true, Your Honor. Let me clarify that there was no testimony before the jury about someone specifically seeing the stab wounds in the eye.  and see that they were caused by the stabbing implement. They look at Government's Excerpt of Record, page 8, as they are. I mean, there's no reasonable explanation for what caused those wounds, and none has been offered of what would have caused those wounds. So even though the correctional officers specifically see that, I don't think that was an argument that could reasonably be made. I mean, you have these type of stab wounds. They were full-force stab wounds. These were – as hard as they can, they were hard enough to ultimately snap the knife. The standard – the harmless error standard here would be beyond a reasonable doubt? It would be beyond a reasonable doubt. But I think given that the instrument just had to be capable of cutting, we know beyond a reasonable doubt that it was able to cut because it, in fact, did. I mean, the suggestion was that this was a flimsy knife because it was made of styrofoam, but the knife itself wasn't styrofoam. Nobody testified the knife was styrofoam. Hanford testified 12 times it was plastic. So the way we would parse this argument, the harmless error argument, and, again, you have to keep in mind to get to that argument, we have to find that the instruction was erroneous. You have to follow me down that road. So what the jury would do is get to the three elements, and when it gets to the third element there, I would say, we have to find that it's a prison-made knife, and they say, well, yeah, sure, it's a prison-made knife, and stop there. That would be the... And in your view, what you're saying is if they had gotten to the third element and they had been properly instructed, it's beyond a reasonable doubt that they would have found that this knife, as used, is dangerous. That's correct, Your Honor. In fact, I do think it's relevant... It's a pretty significant leap. I would actually say, respectfully, that it's not, because defendant's harmless error argument ignores the findings of the jury, and although Netter doesn't depend on what the jury actually found, the jury doesn't necessarily have found it, I would like to point out what the jury did find. They did find that it was a knife here. They did find that it was a prison-made knife. There is no reason to have a knife in prison. The only reason to have a knife is that it could be used as a weapon. Dr. Utost? Well, I think this Court in Young said that there would be no reason to have a weapon in prison. That's why I say crime of violence to merely possess a weapon. I mean, is it possible that it was ineffectively made? Yes, it's conceivably possible, but the jury found it was a prison-made weapon. They also found that the defendant intentionally struck the victim with the intent to inflict bodily harm. Is it possible the defendant was completely ineffective in doing that because the knife he used was so flimsy? Yes, it's conceivably possible. But they also rejected the intent of murder. So they didn't think it was intended to kill him, right? That's true, although, I mean, it's hard to say why they did. They didn't have any evidence of motive here. They didn't see the beginning of the fight. I don't think it goes to the issue of dangerousness, whether they – because dangerousness is much less than – All right, but they didn't think it was intended to kill him. I mean, that has to be what they decided. Whether they thought the weapon was capable of, yes, I think they did not find that he intended to kill them. I don't think that's necessarily a finding on the capability of the weapon itself as opposed to what the specific person intended. But, yes. None of the three principles testified? That's correct. I'm asking a question. Defendant didn't testify. Defendant didn't testify. His co-defendant didn't testify. He was tried separately, and the victim did not testify in this case. What you had in describing the attack was the two correctional officers who came in, as I said, 10 to 20 seconds in, and you had the person who collected the weapon and took photographs, including the injuries. That's Bangford. And then you have Desperos' testimony. But we think in light of that, that this is – any error would necessarily be harmless. I mean, this is a – knives are intrinsically dangerous weapons, and this was a knife, and it was not a flimsy knife. Where did you say the pictures were? It's at Government Secretary of the Record. If I could take you through them. I hope that you got color photos, which is what we provided to the original. The injuries themselves start at Government Secretary of the Record, page 8. This is the – at Government Secretary of the Record, page 8, is the injuries to the – above the eye. These are the three full-skin thickness lacerations, which Desperos testifies to at Government Secretary of the Record, page 223. Page 9 is the top-of-the-head injury, again, a full-skin thickness laceration, which Desperos again testifies to at page 223. You have – page 10, you have what are described as superficial abrasion to the neck. This was a 6-centimeter superficial abrasion. Desperos testified to it at Executive Record, page 224. You have at Executive Record, page 11, you have the injuries to the back. Okay. You are over your time. I apologize, Your Honor. The government submits. Okay. Thank you. We'll hear from the rebuttal. Ms. Chen, if you choose to take rebuttal, now is the time. I'm in the unusual position, since I'm a public defender and an appellate attorney, of emphasizing the standard of review in this case, because what the government has presented is that there's a reasonable likelihood that the jury got it right. There's a reasonable likelihood that the jury read the instruction the way the government and the panel read the instruction, but that's not the standard. I'm not sure – sorry, go ahead. The standard is whether there's a reasonable likelihood that the jury got it wrong. I'm not sure I understand the standard. Neither says that if an element is omitted, then it has to be harmless beyond a reasonable doubt. You apply Chapman. Now, as I read it here, the element wasn't omitted. It was just, oh, committee writing instead of an articulate individual writing. It's a form book instruction, and it's not very clear. I don't know if you apply harmless beyond a reasonable doubt or exactly what standard to apply to poor writing. Well, I think that there's two standards that we have to apply to. The first standard is the standard of the poor writing, and the poor writing standard, as this Court and the Supreme Court have held, is if an instruction is ambiguous, and I think poor writing means ambiguous, then we apply the reasonable likelihood standard in terms of is it reasonably likely that the jury interpreted this instruction to omit an element of the offense. If I don't win on that, then we don't go to harmlessness at all. So I think this Court has made clear that if an instruction is just erroneous, you don't apply the reasonable likelihood standard, and that's in Ho v. Kerry and Wade v. Calderon. But if the instruction is ambiguous, then you apply the reasonable likelihood standard. Counsel, I would like you to get to the second half because I have some difficulty seeing how a reasonable jury would find that this object that's shown in color in the government's excerpts and in black and white in your excerpts is not, as used, capable of inflicting serious bodily injury. I don't understand how a jury could find that. I think that a jury could – well, first of all, the jury does not need to find that this weapon was not capable of. What the jury needs to find is that the government has not proved beyond a reasonable doubt that it is capable of. Right. But if your exact instruction had been given, the jury would have been required to find that – I have to find it here – that an object – that Smith used a dangerous weapon and that an object is a dangerous weapon if used in a way that's capable of causing death or serious bodily injury. And so I'm assuming for the moment that that's the correct instruction, the one that was given was wrong under some theory. But the harmless error standard asks us to say, is there any possibility that a jury could have acquitted him under what you assert is the correct instruction? And I guess I just don't see that possibility. First of all, it's not whether the jury could have acquitted him. It's whether the jury could have not convicted him. So if a jury – how? Okay. Use that. I don't understand how you would get even one juror to find other than for a conviction. This knife broke. And I think that that fact alone, it's not dispositive. But it's very, very important because the government has portrayed the question as, was this a knife knife or was this a flimsy knife? That's not what the jury would have had to find. No, it would have had to find that it was capable of causing serious bodily injury and in view of the fact that it actually did cause serious bodily injury. But it didn't. The definition of serious bodily injury is bodily injury that involves a substantial risk of death. Okay, we know that it didn't, right? Right. Not only that, we know that the jury didn't think that it – I think we know that the jury thought – Well, we don't – don't go there. The jury acquitted. They didn't hang. They acquitted on the first count. Okay. Extreme physical pain. What we have is injuries that required minor first aid. This physician's assistant who was not licensed or allowed to do anything but suture minor injuries was allowed to handle this. He wasn't sent to the hospital. Okay. There was no evidence of extreme physical pain. Protracted and obvious disfigurement. Clearly this was not protracted and obvious. It might have been obvious, but I'm not even sure it was disfigurement or protracted. Or protracted loss or impairment of the function of a bodily member, organ, or mental faculty. So this weapon did not cause serious bodily injury. This weapon caused injuries that required minor first aid that could be provided by a physician's assistant. So then the question is, was it capable as used of having done that? And in this case, the evidence was that, and I think closing argument was that Mr. Hellam was so large he could squish Mike Tyson like a bug. Okay, so Hellam is holding the victim. And our client is allegedly, the evidence was, stabbing him as hard as he could. Okay. And what happened? The knife broke. So I think that there's at least, I think it's actually quite likely that the jury would have found that this was not a dangerous weapon. But that's not what I need to prove. What I need to prove is that a rational jury could have concluded that the government had not proved beyond a reasonable doubt. And I think that that standard means we have to win. You just switched your standard. Rational juror is what I assume is what you mean. Rational juror. Rational juror. Yes, rational juror. Well, a rational jury, really. A rational jury because if there's one rational juror that doesn't find this, then the jury doesn't convict. And the error is harmless. It's not harmless. Could you just, to back up for a moment, I'm just trying to trace through, what's the basis for importing this definition into the section 113A3, I guess it is, which says, with intent to do bodily harm? The rationale is that this court has defined dangerous weapon as a weapon that is capable of causing death or serious bodily injury. It hasn't defined serious bodily injury, but there is a definition of serious bodily injury in the statute. But it was not proposed to the court as an instruction in this case. No, and that's not the issue that I'm arguing. So the statutory definition is by way of persuasion that the court should adopt that statutory definition as being a reasonable definition of serious bodily injury, is that? Yes, and it makes sense because the statutory maximum for assault that causes serious bodily injury is 10 years. And the statutory maximum for assault with a dangerous weapon, which is a weapon that is capable, as used, of causing death or serious bodily injury, is 10 years. So no, I don't have legislation that shows that Congress meant for this definition to be imported, but it certainly makes sense in light of the statutory scheme. Well, in the absence of a request at the trial that it be defined, what are we supposed to do? Just reach out and decide that issue as to what it means in deciding harmlessness if we find that there is an error? Or I guess I'm not really sure how we even get there. I don't think that anyone has contested that that is the definition of serious bodily injury. So, of course, when this court is determining harmlessness. Well, opposing counsel did. He said that there's no real reason to think that Congress intended the two to be coextensive. He didn't offer an alternative. Nor did he raise it at any other time in these proceedings. He didn't raise it. Well, you didn't raise it by asking. I guess my problem is this. If we get to this point, we'll be asking ourselves whether an error in the instructions was harmless beyond a reasonable doubt. And in doing that, we have to look only at the instruction that you proposed, which contains no definition of serious bodily injury. So I guess we have to think, what would a jury have done with an undefined term like that, since that's the case that's been handed to us? Well, I don't think we have to think. We know what the statute – we know what we think – okay, I'm sorry. We don't know what the statute requires because the statute doesn't say. The panel imported this definition. The government never contested this definition. There is no other definition that's been proposed in any other realm. So I think what we have to look at is not what the jury would have done, but whether the evidence in this record was such that a rational jury, could have found that the government hadn't proved this beyond a reasonable doubt. And of course this court then will have to define what the actual element is. But there has been no contest in any of these proceedings that the statutory definition of serious bodily injury, which is applied in the assault context, is the definition that applies. So I don't think that that's actually a tough question or one that's hard to reach in this case. There was no request for – perhaps the jury would have asked what serious bodily injury, if it thought it had to reach it. It clearly didn't think – it doesn't look like the jury had to – Or maybe it implied a common sense dictionary definition. Well, I don't think it applied anything because it wasn't asked to make the finding. And this is – and that's where we started, which is whether a jury could have read this instruction wrongly. And I think that clearly they could have. There are a number of ways that the jury could have read this instruction. It could have read the instruction to think that this so-called definition of a dangerous weapon was a factor for it to consider, and there was no requirement of proof beyond a reasonable doubt. Or it could have read the instruction, which I think is much more likely, that it didn't need to reach this issue at all. That somehow the court had already determined that a prison-made knife is a dangerous weapon, and that's why the jury was only being asked to determine whether Mr. Smith used this knife. And that's it. So, as I said, under the standard, I think that we have to win. And are there no further questions? Okay. Thank you, counsel. I'm going to make a final argument from both sides. The case just argued, it stands to reason,
judges: Kozinski , Schroeder , Reinhardt, Kleinfeld , Hawkins , Graber , Wardlaw , Gould , Paez , Berzon , Ikuta